JOHN W. BENNETT, Appellant, *against* THE NORTH BRITISH AND MERCANTILE INSURANCE COMPANY OF LONDON AND EDINBURGH, Respondent.

(Decided April 7th, 1879.)

That kerosene oil is a refined coal oil, or that it is a refined earth oil, are not such facts as can be judicially noticed or found without evidence.

*It seems*, that a clause in a policy of fire insurance, declaring the policy void if " camphene, burning fluid, or refined coal or earth oils " are " used " on the insured premises, will not be construed to intend the ordinary use of kerosene oil for illuminating purposes.

APPEAL from a judgment of this court, entered for defendant upon the report of Samuel Jones, referee, dismissing the complaint on the merits.

The action was brought on a fire insurance policy to recover the loss suffered by the insured through a fire occurring during the life of the policy.

The action was defended on the ground that the policy had been avoided by the keeping and storing on the insured premises of kerosene and refined coal and earth oils, the keeping or storing of which on the premises, by the terms of the policy, voided it.

The referee found that kerosene oil was used on the premises, and as a separate finding " that kerosene oil " was " a refined coal oil."

There was no evidence produced before the referee as to the origin or nature of kerosene oil.

*John L. Hill*, for appellant.

*C. E Tracy*, for respondent.

VAN HOESEN, J.—If the referee meant that oil expressed from coal is called kerosene, his finding would not conflict with the truth. If, however, he meant that kerosene is

always produced from coal he was entirely mistaken. At the present day, the production of kerosene from coal, or from shale, may be witnessed in the laboratory of a chemist, but not in the factory of a refiner. Kerosene, the article sold for lighting purposes, is now, and for some years has been, made from petroleum, and petroleum is not a coal oil ; at least there is no general belief among men of science that it is. Petroleum is what Judge Earl, in *Buchanan* v. *The Exchange Ins. Co.* (61 N. Y. 29), declared it to be—a rock or earth oil. In the article on petroleum in the American Cyclopædia rock oils are said not to differ from products distilled from bituminous coals or shales ; but they are found in geological formations which were not great repositories of animal or vegetable substances, and are rarely found in proximity to beds of coal. Again, it is said : " Though we obtain the rock oil artificially only from bituminous shales and coal, its occurrence is not always limited to localities where large bodies of these formations are known to exist. On the contrary, springs of it issue in different parts of the world from all the stratified rocks, and from the volcanic and metamorphic formations. It is sometimes traced to beds of lignite. In New York and in north-west Pennsylvania the wells are entirely outside of the coal field, and so remote from it that we cannot well imagine any connection between the oil and the coal beds."

Again, it is said that " the process of refining petroleum is the same as that devised for the rectification of crude coal oils." In short, there is no doubt that petroleum is not a coal oil, and that the kerosene of commerce is, at this time, refined petroleum, and nothing else. The policy of insurance in this case recognizes the difference between coal oils and earth oils, and the referee was in error in assuming that they were one and the same, and that kerosene was necessarily a coal oil.

The policy prohibits the use of either coal oils or earth oils, and it may be argued that since kerosene is a product of either the one or the other, the finding of the referee shows a violation by the insured of the conditions of the

policy in his use of kerosene. But, in answer to that, it is sufficient to say that the finding of the referee that the insured used refined coal oil is without evidence to support it, and that the judgment is not to be supported by our assuming that the insured used refined earth oil. Some evidence on that subject should have been given before the referee. We can no more assume that earth oil was used than the referee could assume that it was coal oil.

But, even if it had been proved that kerosene is a refined coal oil, the use of it for lighting would not, I think, have vitiated the policy. The policy mentions collectively camphene, burning-fluid and refined earth or coal oils. Camphene is the pure oil or distilled spirits of turpentine, and is considered dangerous on account of its explosive properties (McElrath's Dict. of Words and Phrases of Commerce). Burning-fluid is said to be a highly explosive and very dangerous illuminating liquid—a mixture of camphene and alcohol (McElrath's Dictionary, cited above). The oils referred to must have been explosive oils, or they would not have been classed with articles whose explosiveness is their most noticeable quality. The article called by many names, and known as benzine, benzole, benzoline and gasoline, is obtained from coal naphtha; naphtha is obtained from bituminous coal, and also from petroleum. They appear in the process of distillation. They are, like camphene and burning-fluid, highly inflammable, and are, in that respect, very different from kerosene, which is said to be superior in safety to any other material used for the purpose of illumination. Benzine and naphtha, as products of coal or earth oils, might well be associated with camphene, but kerosene would not be, except in defending a suit upon a policy of insurance. Kerosene is not mentioned by name, and no ordinary man would suppose from reading the policy that the company intended to declare the policy forfeited if an oil in universal use were burned in a lamp. Kerosene is the only liquid used for illumination by an immense majority of the civilized people of the world. In the poorer quarters of every city, and among rich and poor in the country, it is an article of use as

common as bread and meat. It is not explosive or danger-ous, unless used negligently, and evidence of a conclusive character must be adduced to satisfy the court that the par-ties agreed that the insured should not employ the safest light accessible to those who must use lamps. The Supreme Court of Pennsylvania, in *Birmingham Ins. Co.* v. *Kroegher* (83 Pa. St. 66), where the policy forbade the use of " cam-phene, spirit-gas, burning-fluid, chemical oils," and the hav-ing of "petroleum or any of its products," said, " It is prob-able that this provision would not apply to the use of oil in lighting the premises, for such a use has become a necessity for all buildings in the country in which light is required during the night."

To the same effect are the observations of Judge Earl in the case of *Buchanan* v. *The Exchange Ins. Co.* (61 N. Y. 29).

The Supreme Court of Wisconsin, in *Norse* v. *The Buffalo Ins. Co.* (11 Am. Rep. 587), construed a policy nearly simi-lar in terms in the same way.

I think that the judgment should be reversed and a new trial ordered, with costs to the plaintiff to abide the event.

CHARLES P. DALY, Ch. J., concurred.*

---

* The decision here was affirmed by the Court of Appeals.